For the appellant. We hope you're feeling better. Thank you, Your Honor. I am. I'm feeling much better. And I wanted to take this opportunity to thank the panel for rescheduling this argument. Well, of course, we wouldn't do anything other than that. So we're glad you're here. Good. Thank you. May it please the court. My name is Larry Hoyle. I represent UNITE here. And I'd like to reserve three minutes for rebuttal. That's granted. This is a case of first impression concerning the interpretation of DPPA. And UNITE seeks to reverse the entry of summary judgment against it. Your Honor, I thought I would start this morning with the paragraph on our standard review, page 22, that I think I owe the court some explanation about. It talks about interpreting DPPA to not trump on established rights of unions. I clearly understood that we're not seeking a union exception. Well, Congress didn't give it to you. I mean, it's as simple as that. Well, we weren't seeking it in any case. And what we were trying to do was to establish that this court should attempt to accommodate and harmonize all relevant laws. And some of the fact that we have here a case about labor interests, some things may come across the spectrum that sound like we're trying to establish a union right, and as we said, we're not. This led us to try and analyze this idea that actually we got from a Penn professor, that it seemed to come into play mostly where there were two purposes, one permitted and one unpermitted. And what we decided was that it seemed to us that the court should consider construing the DPPA to avoid a limitation on protected activity. Well, that's a little different than the purposes. Let me ask you an initial question. Did you ask for a jury trial on liability? Yes, ma'am. You did? And did the district court deny that? No, that was granted. On liability? On liability, if we didn't have the trial. Yeah, because the district court gave summary judgment. And he gave summary judgment, and there was a discussion about punitive damages and demand for jury trials. But you preserved your right for jury trial. That's correct. Your request for jury trial. That's my understanding, Your Honor. Okay, now, did anybody suggest to the district court that it should use the mixed motive analysis that comes up in Title VII cases and sometimes in criminal cases? Because the district court took the position that if you have one impermissible purpose. I don't know why we haven't talked about this. I mean, I think there's no question that at least one of the motives for Unite's activity that violated the statute was union organizing. And I think you can go from that that that is not a permissible purpose. They also say they had other purposes that weren't permissible. So you have what is essentially a mixed motive case. And there's lots of precedent of how you analyze mixed motive cases, but that's not what Judge Dalzell did. He said one impermissible purpose is a violation. And my question is how much did Unite put in or argue with respect to the mixed motive cases? Well, I wasn't there, but my recollection. You weren't trial counsel? I was not trial counsel. Your office wasn't trial counsel? My office was not trial counsel. Oh, I'm sorry. But my recollection is that the thrust of the argument on that issue was that the litigation and the union organizing were strictly intermixed and interwoven. No, that's a factual issue. And all I'm asking is what kind of law was presented to Judge Dalzell? What kind of legal arguments? Well, I believe most of the legal arguments were on the basis that this was one activity. All right. I'll keep quiet now. I don't want to take you off your argument, Mr. Brown. That you've raised right now. In fact, it's, I think, best to start with the fact that the dual purpose is what I call this argument, was considered in our briefs and is discussed not as thoroughly as I wish it were, but it was discussed thoroughly. Judge Dalzell, in effect, said when we moved for a summary judgment and the plaintiff's cross moved that we believe that we came within the litigation exception. He said we didn't. But he said it didn't make any difference because you're going to lose anyway. And by that, as he pointed out, the point that Judge Slobaner is just making, he said that this is a non-permissible use, union organizing, that you have coupled here. And therefore, you lose. And he relied upon the statute, 2724A, where it says a person who knowingly obtains, discloses, or uses MBR information for a purpose not permitted under the chapter shall be allowable. And he took that and applied that across the board. In support of that, he relied on the Commonwealth Court case, the Hartman case, which he read as, in effect, supporting his proposition that one impermissible purpose in a dual purpose situation violates the act. Well, it does say a purpose not permitted, right? It says a purpose not permitted under this chapter. This statute was created at a time when there was a concern about a stalker. And it seems to me that it's a practical matter, and also in our reading of Hartman, that this court ought to go beyond that language and interpret it in a common sense, practical fashion. Now, Hartman suggests that it's, in the initial opinion of Hartman, the court says that it looked at all the materials that the people wanted to circulate, and it found out that out of a magazine of 48 pages, 44 of them were of some such number, involved snowmobiling and not safety. And two pages involved safety concerns. And therefore, anything focused on a primary purpose was not for a purpose permitted. Now, if you read the Hartman case, we come to the conclusion that in this dual purpose situation, that the primary purpose analysis is really a good analysis to make here. But the statute doesn't say anything about primary purpose. It says a purpose, right? That's right. And what I'm suggesting is that the Hartman case suggests that the focus ought to be with a primary purpose. And the implication of Hartman is if it had been the other way around, if it had been 40 pages of safety, he would have said okay, and they wouldn't have said anything about the fact that there was a non-permissible purpose. Counselor, are you saying that you get immunized if your primary purpose is one that's permitted? I mean, what if your car is in the driveway? I'm trying to process on you. I notice you have an eagle sticker on the back of your car. So I give you the complaint and I say, hey, you want to buy one of my sweatshirts I'm selling? Eagles? Now, that's not a problem. Now, if I looked at your license plate up to sell you an eagle sweatshirt, that would be an improper purpose, right? That would be an improper purpose, unless it was written considering. Well, we don't have that. We don't have that. That's a bad herring in here. But let me give you a more direct example. A union man goes to knock on your house. You open the door, you let him in, you bring him in, you talk to him, you tell him about there's been discrimination in this plant, this is happening, that's happening, and you talk for three hours. You get up to leave and the union man says, you know, you've got one heck of a lot of information here. And I would think it would be very useful if you joined the union. And that would take a minute. The union man was in your house for three hours, let's say, and telling the story. It seems to me that that's the kind of activity that inevitably is going to happen in these kinds of situations. Are you arguing, then, that the appropriate inquiry in a dual purpose or mixed purpose case should be what was the primary purpose of the statutory violation? Yes, ma'am. Okay. And if that's what you're arguing, is that a factual issue? And who should decide it? I think it's a factual issue. And if you've debated a jury trial, I think it's a jury issue. But what I was getting to, Your Honor, we've developed a test that we think is worth sharing with the court. And I would jump ahead, but before I do, I would point out we have looked at the mixed motive cases that you've talked about, and there are a lot of mixed motive cases that, in effect, support our analysis of what ought to be done here. In effect, when there's a good purpose and a bad purpose for whatever the activity is, there's not the focus on the bad purpose as the district court did here. There is a focus on the good purpose, and it carries the day. But our view is that you first ought to focus on what is the primary purpose of the activity going forward. Then we've got to look at the secondary purpose that's non-permitted. And, for example, if it's atrocious or unlawful, that can't carry the day, obviously. Well, how do you answer Judge Shigaris' question, which is that the statutory language says, A, purpose? As I understand, Judge, he can spit it out for himself. That's right. You got it. How do you answer his question? Well, I answer it by saying that the district court read it that way, but I believe that in the better reading, I know the realistic— Don't worry about the red light. We're going to give you more time because it's an important case. The realistic aspect of what we're dealing with here justifies this court going further and establishing guidelines and rules for how you apply this. But suppose the fact finder says the primary purpose of this was union organizing, and that's not permissible. Then if the fact finder signs that, then I lose. But it's important that we establish some guidelines for this because, just as your example shows, it can get out of hand very easily. We're suggesting that the primary purpose ought to be determined first. And secondly, you look at the secondary purpose to see that it makes sure that it's not unlawful or anything of that nature. For example, in the Dysher case that you may have seen in our briefing on Menteria, you have the policeman that got some information so the husband could serve his wife with some papers. And then the ex-husband went further than that and stalked and harassed the wife. Obviously, if those kinds of characteristics involve the non-permitted purpose, that's going to be a violation of the act also. Can I ask you, in your case, your argument is your primary purpose is litigation, and your secondary purpose is union organizing? That's right. In addition, you understand we argue that they're intermixed, inseparable as such. But once you get to the two purposes, we argue that we have a primary purpose of litigation, a secondary and union organizing. Can I ask you one other question? This primary purpose analysis you're talking about, is this in your brief? Not in the way it's presented here. We've discussed primary purpose, but not as focused as we have today. I mean, I have to tell you that it seemed to me that this is the best kind of the classic oral argument in which the lawyers share with the court, another way to look at the same facts that we're talking about. And so you can't tell us, because you weren't there, whether at least your predecessors argued this to the district court? I'm fairly confident that they did not argue the Hartman argument in the way I have used it. They argued Hartman, but not in the way I'm using it here. We're very concerned not to trap district courts by taking a position that was never put before the district court. It's just not fair. I understand that. But here we have a situation where the issue was discussed. You're sure of that? Is it on the record? Well, I know at least in the opinion, Judge Dalzell said, suppose there were three purposes, two permitted and one unpermitted. Which of the various Dalzell? Which of the various Dalzell? There were three or four in this case. Can you tell us which one? Well, we can find it. I believe that's from the summary judgment opinion. But in any case, the test that we're suggesting we develop that would deal with the two separate purposes, that there should not be liability. One, where the primary purpose is permissible under the act. Two, the secondary purpose is not inherently tortious or unlawful. And the use does not expand the disclosure of the protected MDR information. And that, in effect, means it has to be implemented at the same time. A good example is my three-hour and one-hour. Both of those happen at the same time. And the fact that there is an impermissible purpose combined with a permissible purpose doesn't expand the disclosure of privacy information, protected information. Why doesn't the Supreme Court's decision in Curtis v. Lothar dictate that Pitchler is entitled to a jury trial on punitive damages? I would have to say that there is a seventh amendment right to jury trial, I believe, in these circumstances. However, that is not troped by the fact that the constitutional right of jury trial in the circumstances here do not preclude the court from hearing summary judgment where there is no dispute of material fact and the moving party is aware and is entitled to summary judgment as a matter of law. And what we have here, it's a little unusual, but we have the procedures in which the court found that the requirements of State Farm in terms of sufficient punishment and deterrence had been met. And he looked at the dispute over the punitive damage evidence and he determined that in considering that and taking it in its worst light, it was still not necessary to award punitive damages in order to properly punish and deter Unite. Let's assume for a minute that he was correct on that. Isn't that beside the point? The seventh amendment says that you're entitled to a jury of your peers, not the court making that determination. No, Your Honor, that's not correct in my judgment. And the reason for that is, as a common law judge has always been able to hear summary judgment when the standard is met, and that takes it away from the jury. But did he say, did he phrase it in terms of no rational jury? There was no issue of material fact in dispute and no rational jury could find punitives? That wasn't the way I read his opinion. I read his opinion to say that he thought it was his obligation to ascertain whether punitives were appropriate and he determined that they were not. Well, his opinions are very hard to follow in my judgment. He does say something similar to that, but then he goes and he looks and he analyzes the evidence and he looks at the contrary positions. And he then says that first Unite was punished because of the jury award, the award for damages of legal damages that would be awarded under his view. And secondly, he says they were deterred because they stopped, because of the activity that was going on, they stopped tagging in this case, in this campaign. And before the case was over, they stopped tagging all along. And he said, if that, if they should change their mind and go back to tagging, there's additional future awards could slow them down and stop them. Counselor, you're talking about the merits though, of whether it was appropriate or not. I think that Judge Hartman's point is, was this a summary judgment or was this basically directing a verdict? I think it was the latter. It was a summary judgment. Let me see if I can help us out. It's hard to follow the procedures, but there was cross motions for summary judgment in this case. Then in August of 30 of 06, a Rule 56B order was entered. And the plaintiff wrote a letter saying, in effect, that you need to deal with the punitive damage issues where we don't have, we haven't met the requirements of 54B. Plaintiff being Pitchler? Yes. And so Pitchler, the judge then decided that he would consider the letter that was written on the 7th. And on the 20th of September, he requested the parties to respond to him on the demand for punitive damages. And there is not the cleanest discussion in terms of what was discussed. And it's several pages of discussion in which it ends up effectively, you might ask for summary judgment claim. They ask that summary judgment should be entered in their favor. On the damages issue? On the punitive damages issue. On the punitive damages issue. And at the end of that, he does so. He being the district court? He being the district court does so. And very frankly, in all candor, it took us a long time to follow that chronology through the various papers and the arguments. But I understand that we did find it. Let me try to make sure that I understand your argument. As I understand what you're saying, Mr. Hoyle, you're saying that this is a tort-like action that creates or where the 7th Amendment jury right applies. But as we all know, trial judges routinely deprive people of their jury trial when they find that there are no issues of material fact in dispute and one party is entitled to judgment as a matter of law. And you're saying that's what happened here. That's correct. And I would clearly go further and say you will normally see this in a judgment for a directed verdict. But this is done in the context of the sobering judgment and I think it's fairly stable. I think we understand your position. Thank you. You're way past your time. Thank you. We'll get you back on rebuttal. Okay. I have some other areas I want to cover. I'm sure you did. There are a lot of issues. Good afternoon. My name is David Picker. I'm with the firm of Specter, Gadman, Rosen. I represent the plaintiffs, Elizabeth Pickler and the other plaintiffs in this matter. But in fact, aren't they really espousing the position of the employer? For some reason, isn't it clear on this record that the employer is the one who's paying all the expenses? Is it Sintas? Is that the name of it? Sintas. Sintas. Is that right? This is really a union versus an employer, isn't it? No, Your Honor, it's not. It's not? The employer is not paying this? Excuse me. I'm sorry. I'm sorry. Go ahead, Mr. Warren. You asked me a couple of questions and the answers to those questions are different. The answer to the question is the employer paying the fees. The answer to that is yes. Did the employer put the employees up to this? And the answer to that is no. I don't care because that's something that wouldn't be on the record. The employees whose depositions have been taken clearly were upset and concerned about having people visit them at home and how did they get the information. Okay. And I wanted to add a couple of things. This is not just an anti-stalking statute. It's not limited by language. It's absolutely not limited as anti-stalking. Senator Tom Harkins, who was one of the sponsors, said that we're trying to protect the right of citizens to be left alone. You have a number of permitted purposes that are very limited. And anything that's not in the permitted purpose is forbidden. And so, for example— Is there anything in the record to indicate that Congress considered union organizing one way or the other? There's nothing in the record to—well— And I mean in legislative history. Nothing to consider it one way or the other. But I would add to Your Honor that this was a statute that was enacted in 1994 with a Democratic Congress and a Democratic president. And the unions are known for their lobbying activities and this court should not— expressly or by effect give to the union a union organizing exception that they could not obtain through the political process. No, we can't do that. We can't do that. I mean, we're not that activist. And yet, Your Honor, I would—  Go ahead. I would submit to the court that the dual purpose argument that Council for Uniting is making would result in effect that unionizing. Why? Well, because, Your Honor, the testimony is so consistent and so overwhelming. And I have to add that the record that exists here is a record that was basically a stipulation, unites witnesses, unites organizers, unites doctors. Okay, finish your sentence. This was interesting. I want to know the end of it. You said the record here is so clear that— The record here is so clear that the purpose of this campaign was union organizing. The purpose of looking for litigation, not pursuing litigation, but looking for litigation, was a component, a component of the union organizing campaign, and that was something that Unite stipulated to in its joint stipulation, paragraphs 21 and 29. You have— What did those paragraphs say? 21 and 29? Right. Well, yeah, what did they say? I mean, we can look them up, but— What they say generally, Your Honor, is that, and I believe that this is a fair paraphrase, from the beginning of the Syntax Campaign, looking for potential litigation was a component of the Unite organizing campaign. And you have other witnesses who basically say, well, what we needed to do was we needed to find, we needed to visit people in their home. In Unite's brief, it says, they said, well, why did they have to visit people in their home? This is, there may be page 12. Well, because Syntax interfered with their leafleting. With their what? With their leafleting, their union leafleting. Oh, yeah. R.P. Deere bluntly admitted, and this is at the appendix, page 968, paragraph 29, he bluntly admitted that tagging is necessary for Unite's unionizing efforts. Okay, but that's a factual issue, really. I mean, I don't know, unless you're telling us that either they stipulated in their stipulation, then it's a factual, what the purpose was, the primary, if the test is primary purpose, and that's not clear, but if the test is primary purpose, then that's a factual issue. It is in the Title VII cases. It is in the criminal cases, too. The Supreme Court has so stated. But the legal issue is whether it's enough to have an impermissible purpose, right? And that's what Dalzell said. Right, and if you think about it, there are a couple of ways of thinking about that, Your Honor. The first is, and again, it's not an issue of fact if the evidence is so overwhelming out of the mouths of the Unite. The second thing is that if you even accept the argument that this is an anti-stalking or this is a tortious statute, the tort isn't violating the statute. So if you have, let's say, you have a purpose, a purpose, and then you go and you do something that's not proper based upon the information that you've got because it's a purpose not permitted, what you're basically doing is you're using that, quote, unquote, permitted purpose as an excuse to mask or to excuse the purpose that's not permitted. Juries are smart, but let me ask you a question because there is a limited amount of time. Judge Hardiman asked you about damages. Correct. And I want to go on that. The statute says in the civil statute you're entitled to actual damages. Yes. Or if not, then you're entitled to the liquidated damages. Right. What kind of actual damages would there be in violation of this statute? Your Honor, that's a good question because obviously if the statute were used to do something that was violent, then you might have property damage, you might have physical damage, you might have mental suffering and all that. Are there any claims of anything like that in the complaint in this case? No. In this case, Your Honor, we are seeking liquidated damages. Okay. Now, if there were no actual damages and you're seeking liquidated damages, isn't that a surrogate for punitive damages? No, Your Honor. Liquidated damages is a surrogate for compensatory damages. But if you didn't have any compensatory damages and the statute says everybody's entitled to $2,500 and if you add, if you multiply the 2,000 class members by $2,500, you get $5 million. I did that on my little calculator. Isn't that effectively punitive damages? I mean, what kind of punitive damages can it have beyond that sum? Well, Your Honor, punitive damages goes both to, it goes to the degree of, I say wrongheadedness. I mean, we have so much evidence here that I don't know that I have the time to go through, but it's laid out in our briefs. I read the briefs. They knew that this statute existed. They went ahead and did it. They told Judge Dalzell they'd stop. They hadn't stopped. There's a lot of evidence here to support a jury award that they willfully violated the statute. Now, Congress basically said, we understand that actual tangible injury might be hard to prove and hard to quantify, so we're going to do a substitute of liquidated damages, which is what liquidated damages is understood to be. I'll add that Dovi Chow, the Supreme Court, recognized the fact that there are cases like libel per se and privacy where the court presumes harm. And you don't have to prove actual harm. There's presumed harm. So Congress here made the determination that in the absence of actual substantial harm, substantial harm, we're going to presume $2,500 per violation because we don't want people doing this. We want to protect the privacy of motor vehicle records. I have to give that motor vehicle record. I have to give my information to the motor vehicle department. I don't have a choice. Are you saying it's akin to a consumer protection statute where a lender would be penalized for a technical violation because of the congressional intent to deter things like inadequate disclosure, things like that? It's not penalizing, Your Honor. It's estimating what is just compensation and encouraging people to enforce their rights under it. The standard for punitive damages would be different because it requires a willful violation of the statute, which implies obviously that for compensatory damages it does not have to be willful and it doesn't have to involve knowledge of the statute. And again, the cases are clear. This is illiquid damages. It's a substitute for compensatory damages. It's an alternative. It is a way of estimating in advance that this is just compensation. Counsel, would you address a couple of the things your adversary brought up? For instance, did the district judge here grant summary judgment on the punitive damages issue? He absolutely did, Your Honor, Summary judgment or judgment? Well, my position is that he granted summary judgment improperly. There was no trial, so clearly he granted summary judgment. And what he did when he granted summary judgment is he made a number of assumptions and judgments and assessments of the credibility of Unite and whether Unite was sufficiently chastened and whether Unite, you know, the question of retribution and deterrence, that's a jury question. No case cited, Unite has not cited a single case involving punitive damages where there was a question about punitive damages, where they weren't talking about multiple punitive damages that were multiples. I mean, the State Farm case that he talked about where the Supreme Court basically, cited by Judge Dalzell, basically said, you know, we have to look at retribution, we have to look at, we have to do what's appropriate, we have to do what's proportional. That was a case where the punitive damages were 145 times compensatory damages. But there were compensatory damages. Well, there are compensatory damages here, Your Honor. What? That, yeah. Well, Congress has said that our clients are entitled to liquidated damages. But that's liquidated damages. I'm trying to find out if there's any real, what kind of real damages? Well, Your Honor, here's the thing. I mean, I would not like anybody coming to my house at night to try to organize me. That's why I have a locked gate. You can't ring my bell. And we have people with unlisted numbers. One of the named plaintiffs lives sort of behind and behind and not on the beaten track. So, yeah, so how do you protect that? How do you protect that? What's the harm? Well, the harm is Congress said we're protecting people's privacy. What's the harm when you get a bulk mailing from places that used to sell, states used to sell their motor vehicle lists to bulk mailers?  Well, Congress said there is a harm. And if you can't prove that harm, you get liquidated damages. And that's what liquidated damages is. It's an estimate in advance of what the harm would result. But on the punitives, did Judge Delzell err in your opinion because he erroneously believed it was his function to make that determination in the ultimate analysis? Or, as your adversary argues, did he simply grant summary judgment the same way a trial judge would take the issue of punitives away from a jury? It happens all the time. It's not unusual for a trial judge, at the end of the evidence, to say we're not going to have a trial on punitives because I'm going to award judgment as a matter of law because no rational jury could find outrageousness or willfulness. He erred in both ways. As you know, they're both former trial judges. I'm the only one who never was. Go ahead. Your Honor, first of all, Judge Delzell clearly stated that he thought that the word may gave him authority to adjudicate the issue of punitive damages. That was an error, and I think that Counsel for United has conceded that that was an error. The second question is, did he properly grant summary judgment on this record, holding on this record that no reasonable jury could find that the statutory standard or even the common law standard for punitive damages had been met to the extent that he ruled that way? With respect to Judge Delzell, that was an error as well. And if you look at his decision, he says, I think, essentially, I find that, that United has been sufficiently deterred. Well, I find is kind of a key that you're invading the province of the finer of fact. And he relies, for example— Yeah, but I find my colleagues are always saying we find that when really it is a finer of fact. I don't think that word is—I think really he meant I conclude that when he says I find that. But he concluded it as a matter of law based upon the evidence that clearly shows that a reasonable jury could hold United liable for punitive damages, that a reasonable jury could clearly find that United knew exactly that what it was doing was wrong and took steps to cover it up and misrepresented itself to Judge Delzell. And the president of Unite sat on the witness stand and said, I never heard about this statute before this case when United had been sued before. And Mr. Rayner himself had discussed with House counsel the negotiation of the settlement of that case, signed the settlement that required Unite to purge its records of information obtained from tagging. So there's plenty of evidence to send this case to the jury on punitive damages. Did Unite ever win any of these cases? Which cases? Cases brought against it for violation of the DPPA. To my knowledge, this case and the previous case are the only cases brought against Unite for violating the DPPA. This is a class action. The previous case was settled before there was a class action. I'd like to add something, if I may, a couple of things about the mixed motive question. Because the whole issue of mixed motive was not raised below. No Title VII case was cited to Judge Delzell. What happened below is that... How about this primary purpose test? Well, that wasn't argued. It wasn't argued below. It was not argued in Unite's brief here. And in fact, what happened below was that Unite came in on the summary judgment and basically said, Hey, look, if I had any purpose that was permitted, I'm good. That's a safe harbor. And that was their argument. And then we took that argument and we said, well, that's clearly contrary to the language of the statute. The language of the statute is not you may do this if this. The language of the statute is if you do this for a purpose not permitted, then you have a liability. Well, but Mr. Hoyle pointed to some language in Judge Delzell's opinion in which he said if there were three purposes, and as long as there's one purpose that's impermissible, that's a violation of the statute. So whether they argued primary purpose or not, certainly before us is the legal issue of whether he was right or wrong as a matter of law in saying one purpose, one impermissible purpose is a violation. But it seems to me about... I mean, do you agree with me that far? I agree that you can take that issue. I would still say that it was not really argued to Judge Delzell. I think what Judge Delzell was doing, he was making... Oh, you mean they didn't argue that he was wrong in saying one purpose is enough, one impermissible purpose? Their argument was that if they have one permitted purpose, they win. Okay, and my question is the converse. Did they argue that as a matter of law, you can't say that if one purpose is impermissible, you have violated the statute? Well, that would be the opposite of their argument. Did they argue that at some point? I'm just trying to find out if that was preserved. The argument of proportionality, the argument of what's primary and what's not primary, the argument of percentages was not argued. But he clearly says in his opinion, because I've read that, that if one purpose was impermissible, the statute is violated. Correct. Okay, and so we have before us the issue, is that wrong or right as a matter of law? Right. And that's something no other court has had, right? As far as I know. Well, except for the Hartman case in the Commonwealth Courts. No, Federal Appellate Court. Correct. The Commonwealth Court is an appellate court. It is a state court, I understand, but it's an appellate court. It's a federal statute. It is a federal statute, but the states do have occasion to, as soon as I'm not implying that the Commonwealth Courts is. No, I just want to make sure that we agree what's before us. Well, the idea, the idea. Not how to come out is another question. Right, and I disagree with Unite's counsel's speculation as to how Hartman might have turned out on different facts. We know what the facts are. We know the way that turned out. That's fine. But the fact of the matter is that, I mean, I don't think that the purposes of the statute are served and the purposes of protecting individuals' privacy are served. If we have a jury start to process through percentages of what's a primary purpose and what's not a primary purpose, in addition to which, when you have a situation where people are being bothered, the only justification for bothering them and the only justification for obtaining and using their information, personal and private information, is if they have a purpose that Congress has specifically enumerated as permitted. If they have another purpose, that shouldn't be happening. And if we erode that by allowing percentages and proportionality, then we basically erode the statute. The statute is not going to be the protective statute that Congress clearly intended it to be. Thank you very much. Thank you, Your Honor. Thank you. Let's see if I can cover a number of points in a hurry. Three minutes, right? Yes. Okay. Go ahead. Number one, I can submit, if the court would like it, the brief that we filed on the summary judgment issue that contains and addresses the punitive damage summary judgment. If you would like to see that under the court rules, we can't attach briefs, but we have it in the courtroom and it would direct you to pages 16 through 22. What does that show? What do you say that shows? We contend it shows that we asked for summary relief on the punitive damage question. We can always get it. We could get it. It's in the district court. No, you don't have to give it to us. It's okay. It was Judge Hardiman who questioned about that. Do you want to find out any more? You're saying you moved for summary judgment on that issue? I'm saying we, in effect, asked for summary relief on that issue. What's the difference between summary relief and summary judgment? I'm just trying to be perfectly accurate. Kudos for that. It raises the question, what's the difference? I don't think there is any. Okay. Well, let me challenge you on that. There may be because, at least in the Western District, I'm not sure what the rules are here, but under the summary judgment procedure, there's a requirement that there be undisputed statement of material facts and a back and forth, so there are procedures that I think enlighten the district court as to whether, in fact, there are issues of material fact in dispute. Here we had the district court judge ask the plaintiffs to submit their views on the punitive damage issue. So they got every opportunity to do that before he ruled. And they made a submission? They made a submission on summary judgment. My recollection is a lot of it addresses the Seventh Amendment, but they had the opportunity to say anything they wanted. Okay. I believe, Judge Schlover, you asked about, did we ever win any of these cases that resulted from talking to people? Yeah, because— Yeah, the Valdez case, I'm told, is a case involving driver overtime that we've won. Is a case involving what? Driver overtime. And you've exhausted my knowledge of exactly what that means. Well, I don't understand your answer. I think Judge Schlover asked you about the DPPA, not just any old thing that has sprung from— This was a case that we were very actively litigating and using information that we developed through the DPPA material. Okay. Is that in your brief? I take the answer as yes, Your Honor. Okay. Second, the question was raised in— Yeah, Valdez is cited in your brief. Okay. Actual damages, and I'd just like to quickly direct actual damages, and particularly liquidated damages. Liquidated damages is a surrogate for actual damages. Yeah, that's what Mr. Pickford told us. Yeah, and— Well, he said compensatory, right? Oh. Oh, I'm sorry. Say what you just said again. It is a surrogate for actual damages. Well, that's the same as compensatory damages. The actual damages and compensatory damages are the same thing. Well, I— The way I— Well, all I wanted to know is what—I mean, it was a simple question. It was what kind of actual damages was the statute talks in terms of actual damages? What kind of actual damages? And that went to my other question, which nobody picked up on. Well, they did, and you—well, you did, or you would, which is if you don't have actual damages and you have liquidated damages, then isn't liquidated damages a possible surrogate for punitive damages? That's where I was going. I think— And I know Mr. Pickford doesn't agree. I don't agree in that way. Okay. Liquidated damages is a surrogate for actual damages, and if there's no actual damage, then it's a penalty. And in— Well, that's what I was asking. There's a case called Finkel that Your Honor wrote, F-I-N-K-L-E. I wrote it? In which you adopted the restatement— You know, I've been on this court for 28 1⁄2 years. I cannot remember all the cases I wrote. I'm sure that's true. Finkel? F-I-N-K-L-E. Is it cited somewhere? It's cited in one of our briefs. Yeah, okay. And it adopted the restatement of courts that's— I mean the contracts that say liquidated damage revisions are unenforceable when the loss has not occurred, when there's been no loss at all. And I suggest to you on this record, at this point, there is no evidence of any actual damages. What year was that? Can you tell me that? All right, never mind. Maybe Mr. Finkel can find it. Okay. Everyone agrees there are no actual damages. Your adversary agrees that. But the statute provides for both. The statute says if you don't have actual damages, then you get liquidated damages of $2,500. Not at all, Your Honor. That is not the correct reading of that sentence, I suggest politely. It says the court may award actual damages but not less than liquidated damages in the amount of $2,500. There are two clauses in that sentence. One, an independent clause, the court may award actual damages. And a dependent clause, which is a balance of that sentence, but not less than liquidated damages. There's another provision here that provides that the court can award actual or liquidated. This sentence says that it can provide liquidated damages if there are some actual damages. But the only damage that the court is authorized to award is actual damage. Well, then you're reading liquidated damages right out of the statute. Not at all. All the statute needed to say was the court may award actual damages but not less than $2,500. But the use of the term liquidated damages shows that Congress is sensitive to the fact that in a privacy situation, it's hard and it's difficult to determine the precise amount of actual damages. And it's to point out that you can award, if you have some actual damage, you can award the liquidated damage. And, in fact, you cannot award actual damages less than liquidated damage. That's not what it says, but... Well, I suggest to you, even if this court agreed with my parsing of the sentence, he just said it didn't take him anywhere, which I find... I don't understand that because the idea here is we're trying to find the plain meaning of the statute. And to do that, one of the things, at least I was taught in grammar school, you look at the grammar of the sentence, and the sentence is clear from... If my elementary teacher made me diagram sentences, the but not less than liquidated damage is a dependent cause, modifying the main cause, the court may award actual damages. There's no place that this sentence provides that you can award liquidated damages or actual. It says you can only award... It says you only can award actual damages but not less than the amount of the liquidated damage. So there has to be, first, some actual damage. And on this record, there is none, the actual damage. So let me suggest we compare this to... What you're saying is that if they broke the doorbell when they came in and had... I think what you're saying, and caused $100 damages, then they could get... And they couldn't figure out what the rest is, they could get $2,500? Is that as liquidated damages? If that qualifies as some actual damages. It's interesting to see what the Supreme Court said in Chau. And there are two aspects of Chau that are very relevant to this case. One, that the Supreme Court gave guidance to the judicial world by saying it was hardly unprecedented for Congress to make a guaranteed minimum recovery contingent upon some showing of actual damage, thereby avoiding giveaways to plaintiffs with nothing more than abstract injuries. That's at page 625 of Chau. The other thing, Judge Hardiman and I say, you need to compare, I would request you compare the language in the Chau dicta with the language in the DPPA, and you can see the difference. Judge Souter said if Congress wanted to provide the either-or that you suggest, the actual either-or... I don't read it as saying either-or. It says actual damages, so you get your actual damages. But if you don't have actual damages, or if your actual damages are less than $2,500, then you get... It sets a floor. What this statute tells me is if there's a violation, then the plaintiff gets a minimum of $2,500. If there's actual damage, but there's got to be actual damage. That's what's a crucial aspect of this. If there's not actual damage, the plaintiff gets nothing. Well, I don't know why they put liquidated damages into the statute. They should have left that phrase out. And one of our canons of statutory construction is not to read things out of statute. They put it in to indicate to the world that they're talking about a type of damage that's hard to quantify and that it ought to have some minimum amount of compensation for it. And the problem is that the language is that that dependent clause modifies actual damage. So it requires some showing of actual damage before you can award the plaintiff anything. Once you've got actual damages, you have to award the plaintiff at least the liquidated damage of $2,500. Now, if I could change quickly to the child dictum, it says the government should be liable to the individual for actual damages but in no case less than the sum of $1,000. The government would be liable to the individual for actual damages but in no case less than the sum of $1,000, and that is a situation in which it says the government would be liable to the individual for actual damages, and then it says but in no case, meaning in every event, in no case, in every situation, the government is going to have to pay the $1,000. And that's the difference between but in no case, and in the language of 24B1 which says but not less than liquidated damages. Did you cite Chao to us? I cited Chao, yes. Oh, yeah, I see, Dovi Chao. Okay, yeah, go ahead. And so if the 11th Circuit in Kehoe makes the argument that you're making, in fact, I want to take ownership of it. I'm trying to learn from Kehoe, and I'm trying to find out why we shouldn't follow Kehoe. That was why I asked you that line of question. Let me try to help you with that. First of all, the Kehoe judge says, well, there's a difference in the language, and he says it's not in said no case, and then he says that's non-material, which if you read the two examples, I think is wrong. And then he said liquidated damages are a type of damage separate and distinct from actual damages. That's clearly wrong because anything we know from the common law history of liquidated damages, we know it's an estimate of actual damages. And that's always, you go back to the very early liquidated damage cases, and you find that that's the description of liquidated damages is an estimate. And the law on liquidated damages requires that there be some actual damage on liquidated damage, too, because otherwise, just as a fecal opinion said, if there are no damages, then you can't award a liquidated damage because it's a penalty, and it's unenforceable. Then would they be entitled to punitive damages if it's a penalty? If you're right, then wouldn't Judge Dalzell have been wrong in saying no punitive damages? Because if you're right and they can't get, and there are no actual damages and there are no liquidated damages, then how do they get some recovery? If the statute was violated, big if, aren't they entitled to something? Then there's something provided, Your Honor. And what's the something? The statute provides for injunctive relief and attorneys' fees to get that injunction. Yeah, but then you're reading out of the statute the actual damages, the liquidated damages, and the punitive damages. The punitive damages, Judge Dalzell said that, if I can remember exactly, he said that one of the things that was a deterrent effect was the liquidated damages from the class award, and then he said that's a punishment. That's equivalent to punitive damages. I don't think there's any tie, other than that, between punitive damages and liquidated damages. The surrogate language, I respectfully suggest, is for the estimate of actual damages. Any questions? No. Okay, we've heard you. Thank you. Thank you. I'd like to see both counsel.